## CARTER, State Auditor, v. PHILLIPS.

No. 13060—Opinion Filed Feb. 6, 1923.

(Syllabus.)

**1. Taxation—Oil Well Not a "Mine."**

An oil and gas well is not a "mine," within the meaning of chapter 164, Session Laws 1915 (Income Tax Act), and a producer of oil and gas is not limited in his deductions for exhaustion to five per centum of the gross value of his production, for the taxable year, as in the case of mines.

**2. Same—Federal Income Tax Act—Deduction for Exhaustion Question of Fact—"Unit of Production" Method.**

A person engaged in the business of producing and marketing oil and gas is entitled to a reasonable deduction for exhaustion, and what is a reasonable deduction is a question of fact, and where the evidence shows that such person in making his deductions has followed the "unit of production" method employed by the federal Government in arriving at the taxes to be paid under the Federal Income Tax Act, held, that such method is just and fair to both the state and the taxpayer, and is the proper method to be employed in cases of this character.

**3. Same.**

By the provisions of chapter 164, Sess. Laws 1915, the taxpayer is entitled to charge the cost of the actual drilling, such as labor, fuel, and the like, as expenses, and to charge the cost of equipment, less any salvage value thereof, to his capital account and depreciate the same according to the method employed by the federal Government in like cases.

**4. Same—Temporary Equipment — Exemptions.**

Derricks, casing, and other oil well equipment are not permanent improvements or betterments made to increase the value of the property or estate within the meaning of chapter 164, Sess. Laws 1915, for which no deduction can be allowed, but are merely temporary equipment used only for the purpose of producing oil and gas.

**5. Same—Liability of Lessee's Share of Oil Production on Restricted Land.**

The state may not impose a tax upon the net income derived by a lessee of restricted Indian lands, from sales of his share of oil and gas received under his leases.

**6. Same — Joint Incomes of Husband and Wife—Exemptions.**

In computing the exemptions allowed and the amount of taxes payable under chapter 164, Sess. Laws 1915, the income of the wife shall be added to the income of the husband, where they are not living separately, and the exemptions allowed to the husband shall be deducted. Both income and exemptions should be treated as joint.

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Action by Waite Phillips against Frank Carter, State Auditor. From a judgment for plaintiff, both parties appeal. Modified and affirmed.

George F. Short, Atty. Gen., and C. W. King, Asst. Atty. Gen., for plaintiff in error.

Burford, Miley, Hoffman & Burford and Geo. T. Brown, for defendant in error.

NICHOLSON, J. This case arises over the income tax return of Waite Phillips, an oil producer, for the year 1920. This return was filed and a revision thereof was made by the State Auditor to which Phillips filed objections. A hearing was had, the objections overruled, and an appeal taken to the district court of Oklahoma county, where the return was again revised, and from this judgment of revision both the State Auditor and Phillips have appealed.

The Auditor presents two questions for review: The first being that Phillips was not entitled to charge off annually for exhaustion an amount equal to the proportion of the oil recoverable in the current year to the total recoverable oil, but should have been limited to 5 per cent. for depletion, as provided in the statute; and second, that Phillips should not be permitted to charge off as expenses the total cost of drilling and equipping producing wells.

There is no controverted question of fact in the case. The testimony shows that in making his return, Phillips followed the method and rules prescribed for returns under the Federal Income Tax Act, that all deductions claimed by him were fair, just

and reasonable, so that a determination of the questions presented involves an interpretation of chapter 164, Session Laws 1915, section 1 of which levies a tax upon the entire net income of the taxpayer for the taxable year. Sections 6 of the act provides the method for determining such income, and reads as follows:

"In computing the net income taxable under the provisions of this act, there shall be allowed as deductions from the income of any person:

"First. The necessary expenses actually paid in carrying on any business, not including personal, living or family expenses;

"Second. All interest paid within the year by a taxable person on indebtedness;

"Third. All state, county, school and municipal taxes paid within the year, not including those assessed against local benefits;

"Fourth. Losses actually sustained during the year incurred in trade, or arising from fires or storms, and not compensated for by insurance or otherwise;

"Fifth. Debts due to the taxpayer actually ascertained to be worthless and charged off within the year;

"Sixth. A reasonable allowance for exhaustion, wear and tear of property arising out of its use or employment in the business not to exceed in the case of mines, five per centum of the gross value, at the mine of the output for the year for which the compensation is made, but no deduction shall be made for any amount of expense of restoring property or making good the exhaustion thereof for which an allowance is or has been made; Provided, that no deduction shall be allowed for any amount paid out for new buildings, permanent improvements, or betterments, made to increase the value of any property or estate."

It is with this section that we must deal, as a proper decision rests upon the construction of the language "a reasonable allowance for the exhaustion, wear and tear of property arising out of its use or employment in the business not to exceed in the case of mines, five per centum of the gross value, at the mine of the output for the year for which the compensation is made." Therefore, the inquiry is whether or not an oil or gas well is a mine within the meaning of said section.

This court has said that oil and gas are minerals within the meaning of a reservation by deed of "all mineral rights," upon land described in the deed. Barker v. Campbell-Ratcliff Land Co., 64 Okla. 249, 167 Pac. 468. This cannot be doubted, but neither this court, nor any other, so far as we are informed, has ever held that an oil or gas well is a mine. In Kreps et al. v. Brady, 37 Okla. 754, 133 Pac. 216, it was held that drilling a well in search of oil or gas was not mining within the meaning of section 36, art. 9 of the state Constitution. In Hollingsworth v. Berry, 192 Pac. 763, the Supreme Court of Kansas held that an oil and gas well was not a mine within the meaning of the Workmen's Compensation Act of that state. In Guffey Petroleum Co. v. Murrell, 127 La. 466, 53 South. 705, the court had under consideration a constitutional provision excluding from parochial and municipal taxes for a certain period, the capital, machinery and other property employed in mining operations, and held that mining operation had to do with the work of a mine and neither in the ordinary, nor in the scientific acceptation of the term "mine," is the term "oil well" included; and in Barton v. Wichita River Oil Co. (Texas) 187 S. W. 1043, a laborer claimed a lien upon certain oil well machinery by virtue of a statute which gave to a laborer in any mine in any capacity a lien for services performed, and the court held that an oil well was not a mine, or the driller a miner within the meaning of the statute.

It is significant that nowhere in the constitutional, legislative, or judicial history of this state, has the term "mine" been applied to an oil or gas well, and in every law which refers to oil or gas the terms "well" or "drilling" have been used. Thus, section 25, art. 6 of the Constitution creates the office of Chief Inspector of Mines, Oil and Gas. Why refer to oil and gas if the wells producing them are mines?

Session Laws of 1910, chapter 59, authorized the Chief Mine Inspector to divert certain funds appropriated for the expenses of the mining department to pay the expenses of the oil and gas department. If mining includes the drilling of oil and gas wells, why the necessity of authorizing a diversion of funds? Session Laws of 1910, chapter 44, Session Laws 1913, chapter 240, and Session Laws 1915, chapter 107, provided for a gross production tax, and each of these acts required reports showing the location of each mine or oil or gas well. The Income Tax Act, here under consideration, and the Workmen's Compensation Act were both passed in 1915, the former being approved on March 17, 1915, and the latter on March 22, 1915, so that the two acts must have been under consideration by the Legislature at the same time. The latter act (chapter 246, Sess. Laws 1915) is made applicable to workmen in or about foundaries, blast

furnaces, mines, wells, gas works, water-works, etc., and section 12 of art. 1 of the act defines a mine as follows:

" 'Mine' means any mine where coal, ore, mineral, gypsum, or rock is dug or mined under the ground."

By section 2914, Rev. Laws 1910, it is provided:

"Words used in any statute are to be understood in their ordinary sense, except when a contrary intention plainly appears, and except also that the words hereinafter explained are to be understood as thus explained."

Section 2915, Rev. Laws 1910, reads:

"Whenever the meaning of a word or phrase is defined in any statute, such definition is applicable to the same word or phrase wherever it occurs, except where a contrary intention plainly appears."

It is elementary that words of a statute, if of common use, are to be taken in their plain, obvious and ordinary signification, and accorded their ordinary meaning, and if we accord to the word "mine" its ordinary meaning, it means a place where coal, ore, mineral or other substances are obtained by digging under ground. While oil and gas are minerals in the broad sense of the word, it does not follow that an oil or gas well is a mine. Water is likewise a mineral, but one would hardly refer to his water well as a mine.

We conclude that oil and gas wells are not mines within the meaning of the act under consideration, and that Phillips was not limited in his deduction to the five per centum of the gross value of the production of his oil or gas wells for the taxable year, but he was entitled to a reasonable allowance for exhaustion, and what was a reasonable allowance was a question of fact. The tax imposed by the act under consideration is upon the entire net income of the taxpayer. Net income means profit and profit is derived, in any business in which capital is lost or depleted, only after the expenses of conducting the business are paid and return is made of the capital invested which is gone. Thus, a merchant in arriving at his profit for a given year, must take into consideration the capital invested in stock during the year, and from his gross receipts for the year, deduct first the expenses of conducting the business, and second, the value of the stock remaining on hand at the end of the year, so in the oil and gas business in order for the operator to determine his net income or profit for the year he should take the amount invested during the year, and from this deduct the expenses of the business, and the value of his oil or gas remaining unproduced at the end of the year; and in order that he may not be allowed to take out all of his expenses and investment from the first oil or gas produced, and that both income and cost may be distributed over the various years of his operations, a system of accounting has been worked out by ascertaining as nearly as science will permit, the total amount of the recoverable oil in the property, and to each barrel of this oil is assigned its part of the capital investment, and as that barrel of oil is produced and sold; from the sale price received therefor is taken first, the expense of producing it, and second, its proportion of the capital investment, leaving the balance as profit. By this method, when the property is exhausted, the operator has received back his capital and expenses and has accounted for his net income or loss. This method is known as the "unit of production" method, and is the method employed by the federal government in arriving at the taxes to be paid under the acts of Congress.

It appears to us that this method is just and fair to both the state and to the taxpayer, and no reason is perceived why such method should not be employed by the state in cases of this character.

To apply the statute pertaining to mines and thus permit the operator to deduct but five per centum per annum for exhaustion would in most, if not all cases, be to deprive him of the reasoable deductions to which he is entitled. The taxpayer must receive a return of his investment before there can be a profit. In the case of mines, the ore body is fixed, and no doubt the average life of a mine is approximately 20 years, so that the mine operator may by deducting five per centum per annum for exhaustion be permitted to receive a return of his capital invested. Indeed, he might limit his output to such an extent that he would each year have an income to which an allowance for depletion could be applied. But this is not true of a producer of oil. When the sand is penetrated the oil comes forth in large quantities. Frequently the output cannot be controlled and oftentimes the well is exhausted within a few months. The record in this case discloses that some of the wells drilled by Phillips had each an initial production of 1,600 barrels daily but at the time of the trial the production from these wells was but five barrels daily. Oil is fugacious; it may be under one man's land today and under the land of his neigh-

bor tomorrow. It is a matter of common knowledge that the average life of an oil well is not to exceed five years. Because of the nature of oil and gas, and the manner of producing them, the operator is of necessity compelled to produce all he can in as short a period of time as possible. He cannot limit his production as can the mine operator.

The record shows that Phillips employed the engineer whom the federal government had intrusted with like work in the fields where his property was located, to estimate as accurately as possible, and from an impartial viewpoint, the oil reserves in his property; that he employed accountants of recognized ability to audit the accounts of his own beekkeepers and to prepare his tax return according to the best and fairest methods known. This return was made in accordance with the methods adopted by the federal government, and in our opinion, is the proper method to be employed.

In presenting the second question, the Auditor says that the trial court held that Phillips had a right to deduct as expenses the total cost of drilling wells, erecting derricks and equipping the wells, and that this is contrary to the plain language of the statute which provides "that no deductions shall be allowed for any amount paid out for new buildings, permanent improvements or betterments made to increase the value of any property or estate."

We do not understand that the court so held. As we understand Phillips' return, which was sustained by the trial court in this regard, the cost of the actual drilling, such as labor, fuel and the like, was charged as expense, and the cost of derricks, casing, tubing, rods and other equipment was added to the capital account, and depreciated according to the method employed by the federal government in like cases; that is, the total cost of equipment, less any salvage value, was distributed to the entire recoverable oil and each barrel of oil made to pay its proportionate part. Clearly, Phillips was entitled to deduct as expense the amount paid for labor, fuel, etc. We can see no difference in this regard between the oil operator and the merchant, and no one would contend that the merchant was not entitled to deduct clerk hire, rent, fuel, and the like, as expenses. It was permissible to charge the cost of derricks, casing and equipment to the capital account, unless, as contended by the Auditor, the derricks and other equipment for producing oil are permanent improvements or betterments made to increase

the value of the property or estate, for which no deduction can be allowed. We are unable to see how the derricks, casings and equipment can be considered as permanent improvements or betterments under the wording of the act; obviously, this was not intended. Derricks, casing and other oil well equipment are not permanent improvements or betterments made to increase the value of the property; they are merely temporary equipment used only for the purpose of producing oil or gas. If the well drilled is dry they are removed, and if the well produces they are only used long enough to obtain the production and are removed when the oil or gas is exhausted. They are no more permanent improvements than the engine, boiler and tools used in drilling the well, or the pump used in producing the oil; they are not made to increase the value of the property or estate, and in fact add nothing to the value thereof.

Phillips has filed a cross-petition in error, in which he challenges the correctness of the judgment of the trial court in so far as it held that he was chargeable with, and liable to pay, income tax to the state upon income derived from departmental Indian leases under federal supervision, or upon the oil produced under the rights conveyed thereby.

It was stipulated in the record that Phillips was the owner of certain Osage leases and departmental leases on restricted Indian lands, the income from which was omitted from his amended tax return.

The trial court, following the holding of this court in State v. Gillespie, 81 Okla. 103, 197 Pac. 508, held that the income derived from these leases was taxable. The leases here involved were of the same character as those involved in the Gillespie case, and of course the trial court was bound by the opinion of this court in that case. But since the judgment herein was rendered, the Supreme Court of the United States reversed the judgment of this court in State v. Gillespie, supra, and held that the state may not impose a tax upon the income derived by a lessee of restricted Indian lands from sales of his share of oil and gas received under his lease. Gillespie v. State, 257 U. S. 501, 66 L. Ed. 238. This decision is conclusive, and renders erroneous the judgment in that respect.

Phillips next urges that the trial court erred in holding that he was required to make a joint return for himself and wife. Section 8 of the act is ambiguous, but, in our opinion, it was the intention of the Legislature that both the income and exemp-

tion should be joint; that is, the income of the husband and wife and each child under the age of 18 years should be added together and from their joint income the exemption provided for should be deducted. Obviously, it was not intended that each member of the family who came within the provisions of the act was entitled to the exemption allowed, and it was intended that but one return should be made for the family where they are not living separately.

The records show that Mrs. Phillips had an income which was derived from the sale of an oil lease to Mr. Phillips, and counsel for Phillips argues that if the individuals are to be taxed separately, then a profit arose in this transaction, but if the family funds are to be regarded as one joint account for the purpose of taxation, then no profit could arise in the transfer from one part of the account to another. If Mrs. Phillips derived an income or profit from the sale of her separate property, we fail to see why the fact that this property was sold to her husband would exempt this income from taxation. Had this property been sold to a third person the income would have been taxable and under the provisions of the act, the income therefrom should be added to the income of the husband.

We presume that the Legislature took the view, that these tax matters could be settled between husband and wife. Surely, if Phillips was compelled to return his wife's income for taxation, he could induce her to pay her proportionate share of the tax. In our opinion, the Legislature intended that the head of the family should return the incomes of the members of the family, and regardless of the conditions that may actually exist in the household, the husband is presumed to be the head of the family.

We conclude that the judgment of the trial court should be modified by deducting from the amount found due, the tax on the income derived from the Osage and other departmental leases on restricted Indian lands owned by Phillips, and as so modified, the judgment is affirmed.

JOHNSON, V. C. J., and KANE, KENNAMER, COCHRAN, and BRANSON, JJ., concur.