## CHAMPLIN v. OKLAHOMA TAX COMMISSION et al.

No. 24035.   Opinion Filed March 14, 1933.

Rehearing Denied April 11, 1933.

Harry O. Glasser, Nathan Scarritt, and E. S. Champlin, for plaintiff.

C. W. King, for Oklahoma Tax Commission.

W. C. Hall, for respondents.

Alger Melton, Edgar A. DeMeules, John Embry, Charles Edward Johnson, and V. P. Crowe, amici curiae.

BUSBY, J. This is an original action instituted in this court, wherein the plaintiff, H. H. Champlin, seeks a writ of prohibition to prevent the defendants, the Oklahoma Tax Commission and Melvin Cornish, W. D. Humphrey, and John T. Bailey, in their official capacities as members thereof, from proceeding further with a review of income tax returns made by the plaintiff to the State Auditor under the 1915 income tax law of Oklahoma, as amended by the 1921 act, and also to prevent the defendant from disturbing and readjusting the decisions fixing the amount of tax to be paid as determined by the State Auditor.

It appears from the record that the plaintiff filed with the State Auditor his income tax returns for the years 1917, 1918, 1919, and 1920. In connection with each of these returns the plaintiff claimed deductions for depletion of his producing oil properties. It was the contention of the state at that time that the amount claimed by the plaintiff for such depletion was excessive and that the amount allowable under the state income tax law was limited to five per cent. This claim on the part of the state was based upon the theory that an oil well is a mine, and that by the terms of subdivision 6 of section 6 of the 1915 act (chapter 164, Sess. Laws 1915) the amount allowable for depletion in the case of mines could not exceed five per cent. of the gross value.

At the time this controversy arose, another case was pending in the courts involving the same question. The plaintiff herein entered into a stipulation with the state, whereby he paid the amount claimed by the state as income tax with the understanding that it should be held in a separate fund to await the final determination of the test case then pending in the courts. That case was Carter v. Phillips. It was subsequently decided on appeal in 88 Okla. 202, 212 Pac. 747. The case decided that an oil well was not a mine and that the amount of depletion allowable was not limited to five per cent.

Subsequent to the decision of Carter v. Phillips, supra, the State Auditor returned to the plaintiff $14,354.32.

In 1931 the Oklahoma Tax Commission was created, and it is now proceeding to review the form of returns made to the State Auditor and his decisions thereon, and seeking to recover the money refunded by the State Auditor to the plaintiff on the theory that the State Auditor made an erroneous decision and allowed depletion on the basis of discovery value of properties used in the production and marketing of oil, asserting that such depletion deductions should have been based upon cost, rather than discovery value.

The plaintiff contends that the defendants are without authority or jurisdiction to revise any assessment made under the 1915 income tax law, where there was a determination of the amount due by the Auditor and the tax paid; that the determination of the amount due by the State Auditor is final and conclusive unless appealed from. The plaintiff further urges that prohibition is the proper remedy to prevent defendants from reassessing income taxes against him.

The defendants' theory in seeking a reassessment of income taxes under the 1915 income tax law for the years prior to 1930 is:

"(1) That the Oklahoma Tax Commission under the 1931 act is vested with the same power under the income tax acts of 1915 and 1921 as given thereunder to the State Auditor; that by virtue of the 1931 act, the Tax Commission succeeded to all the rights and duties of said Auditor.

"(2) That in Oklahoma we have no statute of limitations against the state in the collection of a tax or the revision of an income tax return, and that res adjudicata does not apply to an action of the State Auditor in determining the amount of taxes due.

"(3) That the state auditor had no lawful authority in computing income taxes to make a deduction for 'discovery depletion' in the production and marketing of oil and gas. the Oklahoma law limiting such deduction to 'cost depletion' only."

There may be some doubt as to whether the State Auditor of Oklahoma still retains jurisdiction in connection with the 1915 and 1921 income tax acts, as discussed in the briefs by the parties hereto.

We shall not discuss this phase of the case because of the conclusions of law reached herein on other controlling questions. Regardless of whether the jurisdiction vests in the Tax Commission or the State Auditor, the plaintiff should prevail in this ac-

tion. This for the reason that the controversies herein have been completely and finally settled in appropriate proceedings before the State Auditor, at a time when there was no question as to his jurisdiction.

In this action, the principal question is as follows:

When a taxpayer has filed his income tax return with the State Auditor for any year subsequent to the 1915 income tax law and prior to the income tax law of April, 4, 1931, and the State Auditor has determined the amount due thereunder and this sum has been paid, can either the State Auditor or the Oklahoma Tax Commission, in subsequent years, review the proceedings, question the method and correctness of the computation, and then determine that a different sum was due other than was previously determined?

In the absence of omission or of fraud perpetrated by the taxpayer, we say this cannot be done.

The State Auditor, prior to the 1931 income tax act and the act creating the Oklahoma Tax Commission, supra, was vested with authority by virtue of the 1915 income tax law to hear and determine all complaints arising by virtue of the sworn return of the taxpayer, then to review and to revise the returns if he saw fit.

The Auditor was required by statute to complete his assessment on or before the first Monday in June of each year. Finally he was required to compute and collect the tax. He was vested with certain discretion by virtue of his authority, and acted in a quasi-judicial capacity. He had to determine both questions of fact and of law and mixed questions of fact and law.

Under the 1915 act, a remedy of appeal was provided for. There is nothing in the act by which we can imply a legislative intention after the time for appeal has expired to permit him to review his action. His powers to correct and adjust assessments and the remedies and proceedings for review are made the same as those applicable to the county board of equalization in Oklahoma.

Section 9 of the 1915 income tax law was carried forward as section 9942, C. O. S. 1921. This section reads as follows:

"9942 State Auditor—Revision of Returns: The state auditor is authorized to revise any returns that may be made to him, and he shall notify the party making such return of such revision on or before the first Monday in May following, and the Auditor shall hear and determine all complaints arising from such revision which are made before the first Monday in June following

thereafter, and he shall have the same power to correct and adjust such assessment of income as is now given by law to the county board of equalization in cases of assessments of property ad valorem, and the remedy and proceedings before the State Auditor shall be the same as those provided for reviewing assessments of property ad valorem by the county board of equalization."

It will be observed from reading the above statute that it was the intention of the Legislature to adopt, as a part of the procedure applicable to the administration of the income tax law, the provisions governing remedies provided for before the county board of equalization in connection with ad valorem taxation. See, also, Oklahoma Statutes 1931, section 12646 et seq., relative to tax assessments and procedure.

The statutes with reference to assessments and procedure, and the authority of the State Auditor, were construed in the case of Berryhill v. Carter, State Auditor (1919), 76 Okla. 248, 185 P. 93. We quote from that case as follows:

"The Legislature undoubtedly intended that the State Auditor should exercise the same power as a county board of equalization in correcting and adjusting an income tax return, and that an aggrieved taxpayer had all rights and remedies that he may have before such county board to have the same reviewed. We will, therefore, ascertain the duties of a county board of equalization in a matter of ad valorem taxation and the rights and remedies of an aggrieved taxpayer. Section 2 of chapter 107, Session Laws of 1915, is as follows:

"'Any taxpayer feeling aggrieved at the assessment as made by the assessor, or the equalization as made by the county board of equalization may, during the session of said board, or, if the same is closed, within ten days after the first Monday in June, file with said assessor as secretary of said board, a written complaint specifying his grievances and the pertinent facts in relation thereto in ordinary and concise language and without repetition, in such manner as to enable a person of common understanding to know what is intended; and said board shall be authorized and empowered to take evidence pertinent to said complaint and for that purpose is authorized to compel the attendance of witnesses and the production of books and papers by subpoena and to correct or adjust the same as may seem just.' "

Thus it will be seen that the statutes regulating the proceedings for the adjustment of disputed tax matters before the board of equalization are comprehensive in their nature, and contemplate a complete settlement of disputed questions, either by

determination of the board or by a review of the board's determination on appeal immediately after the amount of tax due has been determined by the board.

The law books are full of authorities to the effect that tax boards as boards of tax review or of equalization in making or reviewing assessments of taxes, act in a quasi-judicial capacity. In fact, the remedy by appeal presupposes the exercise of quasi-judicial functions by the boards from which appeals are permitted.

This court passed squarely upon the question of the finality of an assessment made by the Oklahoma State Board of Equalization, in the case of Prairie Oil & Gas Co. v. Cruce, Gov., 45 Okla. 774, 147 P. 152. In that case, after the board had made its assessment and certified same to the State Auditor, it attempted a few months afterwards to make an added assessment against the same party. A writ of prohibition was granted by this court on the theory that there had been a final adjudication of the questions involved, and that the board was without further authority. Syllabus paragraph 2 of that case reads as follows:

"Where the State Board of Equalization has assessed property of all railroad and public service corporations, and has equalized the various county assessments and computed the amount of the state levy, and caused the same to be certified by the State Auditor to the several county clerks, said state board is without jurisdiction or authority to reconvene and reassess said property, or any part thereof."

We quote further from the opinion as follows:

"It is further urged by plaintiff that after the said board had assessed the property of plaintiff and all other public service corporations, and had equalized the assessments of the various counties, and caused the State Auditor to certify such action to the clerks of the several counties of the state wherein property was located, that the board had exhausted its jurisdiction, and was without authority to take any further action in the premises, and should be held in law to have adjourned and to be functus officio. We are of the opinion that, when said board had valued and assessed all the property of public service corporations in the state, and had caused the same to be certified by the State Auditor to the county clerk, as required by section 7349, they were without authority to reconvene and reconsider their action by reassessing property already assessed, or by adding thereto property which it was claimed had been omitted, except as we shall hereinafter point out. * * *

"Another reason why we think this must necessarily be so is that by section 7368, Rev. Laws 1910, provision is made for an appeal in matters of this kind, and it is provided that appeals from the state board may be taken to the Supreme Court within 60 days after the adjournment of said board, but not afterward. An appeal necessarily carries with it the idea of some finality to the act appealed from, and, if it be held that the action of the board is not final when the result is certified to the county clerks, and that the board retains jurisdiction in the premises until it shall finally adjourn at its pleasure, then no right of appeal would accrue from any assessment until the adjournment was, in fact, had; or, if it be held that an appeal must be taken within 60 days from the date the board took final action upon the particular matter appealed from, then we would have this condition presented, of an appeal in a matter which was still within the jurisdiction and under the control of the board, and should they see fit to do so, the matter appealed from might be reconsidered and a different result arrived at from which an additional appeal could be taken, and so on from every order they might make. This, in our judgment, would lead to intolerable confusion, and would put it within the power of persons, and corporations seeking to dodge their taxes to suspend payment thereof by neglecting to appeal until payment was sought to be enforced; when, if it be held the board still had jurisdiction, they could give notice of appeal under the provisions of the sections above referred to, and suspend the payment of taxes."

The finality of the assessment by a proper officer was considered by this court in the case of In re Durant National Bank, 107 Okla. 65, 230 P. 712. Justice McNeill, in that case, quoted with approval from the case of the People's Savings Bank v. Layman (C. C.) 134 F. 635, as follows:

"Under the law of Iowa, where an assessor has made an assessment without fraud on his part or concealment on the part of the property owner, and no steps have been taken to review such assessment in the manner provided by statute, through the board of equalization and the courts, it becomes a finality: and after the taxes have been levied thereon and paid, the property cannot be reassessed for the same year because the assessor, through a mistake of law, undervalued it. * * *

"In making the assessment there was no fraud practiced upon the assessor. The assessor was acquainted with all the facts. The assessor furnished the forms on which the bank should make its reports. All the facts were truthfully disclosed on the verified statement by the cashier of the bank, which the assessor carried to the auditor's office. The cashier called attention to the

asset of the government bonds, and claimed the exemption. The assessor, through a mistake of law, conceded the claim. Now, can the treasurer, acting in the capacity of an assessor, correct the mistake? That the assessor, in part at least, acts judicially, there can be no doubt. He administers an oath to the bank officer. He takes his evidence. He considers such other facts as come to his notice. He calls for and examines the assets. He inspects the books. He gets, or tries to get, all desired information. And after hearing the testimony, and seeing all the evidence, he makes his findings and adopts his conclusions. Surely that is a judicial act. And if that is so, then how can it be impeached, excepting for fraud, or by the statutory mode of review by the local equalization board, and then by appeal to the state court?"

This was a construction of the Iowa statute and is in line with the holding of this court in the Prairie Oil & Gas Co. v. Cruce, Gov., et al., Case, supra.

But it is urged by the defendant herein that a difference exists between the determination of the value of property for the purposes of ad valorem taxation and a determination of the amount due as income tax, in that a determination of the value of tangible property rests largely on the matter of opinion, whereas, income taxes are a matter of computation. While this essential difference in the nature of the two taxes does exist, yet it is not a controlling factor in this case, and the determination of the amount to be paid under an income tax law involves in many instances the exercise of judicial functions. In addition to computing the amount of the income tax, it must be decided what exemptions or deductions are permissible under the law. The determinations of these questions in disputed cases are discretionary in their nature, involving a review of the facts and an application of the law thereto. These determinations must be placed in the hands of some officer or board exercising judicial or quasi-judicial power. The 1915 income tax law as amended by the 1921 act vested the State Auditor with this power, and by reference to the section of the statute concerning proceedings before county boards of equalization, provided for appeal from his decision. Regardless of whether decisions on income tax matters should be viewed in the same light and placed upon the same plane with decisions upon questions of valuation and ad valorem tax matters, that question is one for legislative determination rather than judicial construction. Our Legislature has seen fit to place

them in the same class and regard them in the same light by making the same provision of the statutes regulating the proceedings applicable to both. It is not within the proper province of this court to decide that the Legislature acted unwisely. Our duty is to interpret and construe the law as we find it, leaving questions of legislative policy to that branch of the government. The comprehensive procedure provided by our statutes contemplates a complete determination of the issues involved in connection with each return by an individual taxpayer within a limited time after the return is filed. It provides for an appeal from a decision of the Auditor.

In the absence of active fraud or omission, neither of which questions is involved in this case, the decision of the State Auditor should be final unless appealed from, and if appealed from, the decision on appeal should settle the issues. In the absence of such omission of fraud, neither the State Auditor nor the Tax Commission should be permitted to review a controversy already settled and disturb an adjudication already made.

In a recent case the state of Missouri has passed squarely upon the question at bar. We think it announces the correct rule that should be followed in this state. We refer to the case of State ex rel. v. Gehner, 325 Mo. 24, 27 S. W. (2d) 1. In that case the proper taxing authority of Missouri had allowed the relator to deduct from its taxable income, the sum of $515,882.03, representing such portion of its federal income tax as should properly be allocated to relator's Missouri business. No appeal was taken, and the adjudication became final. Later, in a different, but similar case (State ex rel. Liggett & Myers Tobacco Co. v. Gehner, 316 Mo. 1075, 292 S. W. 1028, 1030) the Supreme Court of Missouri held federal income taxes of foreign corporations were not deductible from state income taxes. The Attorney General then attempted to force a redetermination of relator's tax, but the court, in the opinion first above cited, held that, although the adjudication allowing the deduction was erroneous, it was nevertheless final, because the Missouri statute did not specifically allow a redetermination. The court said in part:

"The assessment of personal property made by the assessor becomes final, unless changed by the Board of Equalization. Thereafter the assessing authorities have no jurisdiction or power to reopen the assessment. State ex rel. Hopkins v. Tobacco Co., 140 Mo. 218, Loc. Cit. 223, 41 S. W.

776; State ex rel. Hayes v. Seahorn, 139 Mo. 582, Loc. Cit. 59, 610, 39 S. W. 809; State ex rel. Wenneker v. Cummings, 151 Mo. 49, Loc. Cit. 59, 52 S. W. 29. Nor may these officers increase the assessment without notice to the taxpayer. State ex rel. Ziegenhein v. Spencer, 114 Mo. 574, 21 S. W. 837. The same rules must be regarded as applying to the assessment of incomes for taxation."

The Supreme Court of Wisconsin, in State ex rel. Schuster Realty Co. v. Lyons, 197 N. W. 585, denied the right of the Tax Commission of that state to redetermine depreciation and thereby reassess a state income tax. It was claimed that the statute gave the Commission authority to reassess, but the Wisconsin court said:

"If this were so, there would be nothing to prevent the Tax Commission next year from again changing its judgment as to the rate of depreciation that should be allowed and to make additional assessments for the same years. This process might be repeated again and again though in each reassessment identically the same facts would be present. The only justification for the reassessment would be that the Commission has changed its judgment as to what should be the proper rate of depreciation. Such a statute so construed might well be declared unconstitutional as being so unreasonable and oppressive as not to come within the constitutional requirement of due process of law."

In the absence of fraud or omission we think the rule laid down by the Wisconsin and Missouri courts is correct, and should be followed in this state.

The defendant Oklahoma Tax Commission did not urge that the plaintiff omitted facts relative to his income or perpetrated a fraud upon the Auditor. Its contention is that the State Auditor erroneously determined the amount of income tax due and payable by the plaintiff by permitting deductions for depletion based upon discovery value, contending in this connection that the deductions for depletion under the Oklahoma law should be based upon cost. The defendant urges that the State Auditor misconstrued and misapplied the provisions of the 1915 income tax law.

As we view this case, the question of whether deductions for depletion should be based upon discovery value or upon cost or both is not before us at this time. Assuming, but not deciding, that the Auditor made an erroneous decision and allowed deduction for depletion on the wrong basis, the question cannot be reviewed and reconsidered by the Tax Commission at this time for the reason that the matter has been decided by the Auditor with full knowledge of the facts and no appeal has been taken from his decision. We must bear in mind that the particular deductions complained of by the Oklahoma Tax Commission were first paid by the plaintiff as a part of his income tax payment; that by agreement of the parties and in accordance with a written stipulation executed by the State Auditor, represented by an Assistant Attorney General and the plaintiff, the funds were held separately, awaiting the decision in the case of Carter v. Phillips, supra. That case announced the following rule in syllabus paragraph 2:

"A person engaged in the business of producing and marketing oil and gas is entitled to a reasonable deduction for exhaustion, and what is a reasonable deduction is a question of fact, and, where the evidence shows that such person in making his deductions has followed the 'unit of production' method employed by the federal government in arriving at the taxes to be paid under the Federal Income Tax Act (Com. St. Ann. Supp. 1919, § 6336 1/8 a et seq.) held, that such method is just and fair to both the state and the taxpayer, and is the proper method to be employed in cases of this character."

After the decision was rendered in the Carter Case, the State Auditor allowed deductions for depletion and determined the amount thereof. The money which had been held separately under the stipulation was returned to the plaintiff. The decision in the Carter Case was evidently the controlling factor in the ultimate decision of the State Auditor to return the money in question. If he misinterpreted the law of that case, it was not the result of any fraud practiced by the plaintiff. While the Carter Case was not a judicial determination of the controversy herein, the decision of the Auditor was.

The contention of the defendant, Oklahoma Tax Commission, that this decision by the State Auditor may, several years after it was made, be reopened, reviewed, and altered, is in direct conflict with the principles announced in the cases of Liggett & Myers Tobacco Co. v. Gehner; State ex rel. v. Lyons; In re Durant National Bank; Prairie Oil & Gas Co. v. Cruce, all cited supra, and all of which cases recognized the finality of such a decision. The adoption of the defendants' view would mean that every succeeding administration could delve into the dim and distant past and resurrect the skeleton of old tax returns and pick from the bones already bleached and bare. The taxpayers would never know when their returns had been settled, nor when additional burdens might be imposed

upon them without reference to their present ability to pay. It is the policy of the law that controversies be settled and not continually held in abeyance. We must, therefore, hold that the decision of the State Auditor was judicial in its nature and constituted a complete and final determination of this controversy.

The final question to be determined herein is whether or not plaintiff is entitled to a writ of prohibition. The general rule of this court was laid down in the case of Haskell, Governor, v. Huston, Judge, 21 Okla. 782, 97 P. 982. In that case the court said:

"Prohibition is the proper remedy, where an inferior court assumes to exercise judicial power not granted by law, or is attempting to make an excessive and unauthorized application of judicial force in a cause otherwise properly cognizable by it."

Inasmuch as the Oklahoma Tax Commission is undertaking to review and change the decision of the State Auditor wherein he determined the amount of income tax due under the 1915 law, on the theory that the Auditor's decision was erroneous; and inasmuch as the decision of the Auditor was a final determination of the questions involved, and inasmuch as the Oklahoma Tax Commission is without jurisdiction to change or alter such decision, the writ of prohibition should issue.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, ANDREWS, BAYLESS, and WELCH, JJ., concur. OSBORN, J., dissenting. McNEILL, J., absent.

Note.—See under (3) 22 R. C. L. 14; R. C. L. Perm. Supp. p. 5169.