In re PROTEST OF BLAIN.

No. 32074. Sept. 24, 1946.

*172 P. 2d 795.*

460

Reily & Reily, of Shawnee, for plaintiff in error.

E. L. Mitchell and C. W. King, both of Oklahoma City, for defendant in error, Oklahoma Tax Commision.

GIBSON, C. J. This appeal is prosecuted by Laura B. Blain individually as sole distributee under the will of W. S. Blain, deceased, and as executrix thereof under appointment of the county court of Pottawatomie county, from an order of Oklahoma Tax Commission overruling her protest to additional tax found by the commission to be owing on consideration of fiduciary income tax report.

The difference between $8.18, the amount of tax reported by protestant, and $123.96 ascertained by the commission, appears to have resulted solely from the difference in the standards respectively applied in ascertaining the allowable deduction.

The estate consisted of an undivided interest in oil and gas mineral rights in land. And the sources of reported income were from the sale of part of such interest and sale of oil produced to credit of royalty interest operated under lease.

The profit reflected on sale of royalty interest was computed on value basis of $541 per acre, that being the value appraised by the commission for purpose of computing inheritance tax paid thereon. The deduction claimed by reason of depletion through oil produced was based on the appraised value as cost equivalent and computed on what is termed "unit of production" method (Carter, State Auditor, v. Phillips, 88 Okla. 202, 212 P. 747), and it is contended here by protestant that the course pursued is not only authorized by law but is in accordance with the rules and regulations of the commission promulgated under statutory authority.

The commission entertained the view that the method so employed was not authorized and that the sole method permitted by law for ascertaining the allowable deduction was upon the percentage basis provided by statute and computed the tax which is the subject of the protest here involved.

The only provisions of the statute which we deem necessary to consider in passing upon the legality of the tax as found by the commission are the following from 68 O. S. 1941 § 880, subparagraph (g):

"(g) A reasonable allowance for depreciation, to cover the exhaustion, wear and tear of property, the income from which is required to be included in gross income under this Act, when such property is used in trade or business, and including a reasonable allowance for obsolescence; and an allowance, according to the peculiar condition in each case; in the cases of mines, oil or gas wells, other mineral or natural deposits and timber, situated within the State, to cover the depletion caused by the removal from the natural state of such products, together with the depreciation of improvements used in connection with such operations; such allowance in all cases to be made under rules and regulations to be prescribed by the Commission, and to be based upon cost of the particular property, increased by the cost of development not otherwise deducted and reduced by the depletion allowed (but not less than the amount allowable) in respect of the property since its acquisition by the taxpayer; . . . and, provided, further, that in the case of income derived from oil and or gas wells, any such taxpayer may at his option deduct as an allowance for depletion in lieu of the calculation of depletion as otherwise provided herein twenty (20%) per centum of the gross income from such property during the taxable year, . . ."

The substance of the argument made in support of the percentage tax applied by the commission is, that the word "cost" as used in the quoted statute has reference to an actual cost and in the absence thereof, which is the case here, the 20% of the gross income pro-

vided alternately in the statute is controlling.

Assuming it to be true, as stated, that the right to depletion on cost basis is applicable only where there is an actual cost expended—a conclusion to which we cannot subscribe—it does not follow that the commission would be justified in its award of depletion on the percentage basis. We entertain the view that, under the terms of the act, in the absence of an allowance for depletion under the prescribed cost basis, there would exist no authority to apply the percentage basis. Under the terms of the statute quoted, which is a substitute for the earlier statutes prescribing percentage as the sole basis for depletion (O. S. 1931 §§12503 and 12507) and which were expressly repealed (S. L. 1933, ch. 195), the consent of the taxpayer is made a prerequisite to use of the percentage basis. But such consent, if given, would be unavailing as authority therefor unless given in pursuance of the option afforded by the statute so to do. Hence, without warrant for depletion deductible on cost basis there could arise no option to substitute the percentage "in lieu of the calculation of the depletion as otherwise provided herein". And for these reasons under the facts in this case, there is no authority for the act of the commission in computing, as was done, the tax on the percentage basis.

Though the question whether deduction for depletion is allowable on cost basis is immaterial herein, as indicated, to a decision on said protest, it is necessarily involved in the ultimate determination of the extent of the tax liability.

The basis of the commission's contention that the allowable depletion contemplated must rest upon an actual cost basis, and hence has no application here, is substantially reflected in the following which we quote from the brief of the defendant in error:

"Subsection (f) of Section 883, Title 68, Oklahoma Statutes 1941, reads as follows:

" 'The basis upon which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the same as that provided in this section, for the purpose of determining the gain or loss from the sale or other disposition of such property.'

"It will be noted that the basis as above provided is the basis for depreciation and not for depletion. The phrase 'exhaustion,' wear and tear, and obsolescence' is the phrase used synonymously with depreciation in the Act and established accounting usage, and is never construed as including depletion. . . .

"Had it been the intention of the Legislature that cost depletion be allowed on any basis other than actual cost it would have been expressed in subsection (f), Section 883, above quoted. . . .

"The only provision made in the Act for depletion of oil and gas property is that made in Section 880 above quoted, that being on cost and on no other basis. It will be noted that this same section provides for a depreciation but does not in the case of depletion provide the basis as is therein provided for depletion. The basis for depreciation is provided by subsection (f) of Section 883 hereinabove quoted. It therefore follows that the only provision for depletion in this case is the statutory percentage depletion as allowed by the commission. . . .

"As evidence that the Legislature recognized that there was no basis provided for 'cost depletion' on property acquired by bequest, devise or descent, the Act was amended by the 1943 Legislature by adding to Subsection (g) of Section 880, Title 68, O. S. 1941, the following:

" '(b) but in the case of property acquired by bequest, devise or descent, the basis shall be the fair market value thereof when acquired.' "

The "gain or loss" basis made applicable in subsection (f) of section 883, quoted, has reference to the following preceding provision of the section:

"(a) For the purpose of ascertaining

the gain derived, or loss sustained, from the sale or other disposition of property, real, personal, or mixed, the basis shall be the cost thereof, except: . . .

"(3) In the case of property acquired by bequest, devise or descent, the basis shall be the fair market value thereof when acquired."

The substance of the contention is, that while both depreciation and depletion are provided for in section 880 recourse may be had to section 883 to ascertain the entire basis for applying depreciation, but no recourse may be had thereto in aid of the depletion, which admittedly rests on the same basis when a consideration was paid for the property involved.

The effect of such a construction can best be exposed by illustration. A and B acquire by purchase equal undivided interests in mineral rights. A dies and his interest descends to his heir. Thereafter production is had. B would be allowed depletion to the extent of his purchase price, but the heir, suffering equivalent actual loss of value, would be entitled to no depletion even though his estate were entirely exhausted. Apart from constitutional considerations such a construction cannot be reconciled with the basic legislative intention sought to be encompassed by the law, which is to tax "net income" which, by the terms of the law (68 O. S. 1941 §877), is declared to be gross income less the deductions allowed. Basically the law is considering values before and after. Such values do not depend upon the purchase price paid, but the price where paid may properly be and is made the criterion of the initial value for profit and loss purposes.

This court has often held that the fundamental rule of statutory construction is to ascertain and give effect to the legislative intention expressed in the statute. And considerations that obtain in doing so, which are pertinent here, are thus expressed in the syllabus of Curtis v. Registered Dentists of Oklahoma, 193 Okla. 233, 143 P. 2d 427:

"It is a cardinal rule that in the construction of statutes the legislative intent must govern, and to arrive at the legislative intent, the entire act must be considered, together with all other enactments upon the same subject, and when the intention of the Legislature can be gathered from the entire statute, words may be modified, altered, or supplied to give the statute that force and effect which the Legislature intended."

Pursuing such rule it is well to consider the previous law and the changes wrought therein by the existing law as indicative of the legislative intent expressed in the present law.

Under the law in force in 1931 (O. S. 1931, §§12503 and 12507) the provisions of section 12503 corresponding to those of section 880, quoted above, were as follows:

"(f) An allowance for depreciation, in the case of property used in trade or business, to cover the exhaustion, wear, tear and obsolescence of such property; in the case of mines, oil and gas wells and other natural deposits and timber the allowance for depletion shall be twenty-seven and one-half per centum (27½%) of the gross income from the property during the taxable year. Such allowance shall not exceed fifty per centum (50%) of the net income of the taxpayer (computed without allowance for depletion) from the property."

The provisions of section 12507 corresponding to those of section 883, quoted above, were substantially the same.

This court had occasion to construe the 1931 law in a material aspect in Home-Stake Royalty Corporation v. Weems, 175 Okla. 340, 52 P. 2d 806.

There, the owner of both royalty and leasehold interests sought to claim depletion and depreciation computed on the cost basis. The commission, as to the royalty, allowed depletion on the basis of 27½% of the sales therefrom,

and 50% of sales from leasehold. The appeal was from the order of the commission disallowing depletion of royalty on cost basis.

In affirming the commission, we stated:

"Plaintiff insists that it is entitled to use as a basis for ascertaining its gain or loss the original cost of the oil. It is said that the cost per barrel in place, prior to production, may be approximated by a method recognized by this court as reasonably accurate, the 'unit of production' method (Carter v. Phillips, 88 Okla. 202, 212 P. 747). . . .

"We find no fault with the method sought to be employed in ascertaining the original cost. Plaintiff's argument would no doubt be sound if money derived as gross profits from the trade or business of producing oil and gas had been classified by the act with money received as gross profits from the sale of properties as classified under section 12507, supra. If plaintiff is to be allowed the deduction sought, authority therefor must be clearly expressed in the act. After a careful consideration of the act in question, the absence of legislative assent to the deduction claimed becomes apparent. The question here presented resolves itself into one of legislative classification of subjects for purposes of taxation rather than one involving allowable deductions. . . .

"The only deduction allowed by the act for exhaustion, depreciation, or depletion of the property of plaintiff is 27½ per centum of the gross income from the plaintiff's business as classified by the act. The deduction allowed may appear arbitrary, but the means or methods used in arriving at such deduction are not open to judicial inquiry. If the deduction applies uniformly to all subjects within the classification, the constitutional requirements in that respect are satisfied."

The import of the holding is that the royalty interest being within a class which for the purpose of depletion was confined to a fixed percentage of gross production could not have recourse to the cost basis which applied to another class. With the enactment of the present law, a cost basis is expressly substituted for the previous percentage basis. The percentage basis carried no exceptions and applied alike to mineral interests whether acquired by purchase for value, by gift or by inheritance. With the complete elimination of the percentage basis, it is to be presumed that the method substituted is intended to operate in all cases in which the percentage basis formerly operated, in absence of an expression of an intent to the contrary. And to accomplish this, it is more reasonable to presume that the word "cost" as used in section 880 is to designate a basis in lieu of and in contradistinction to the percentage basis theretofore obtaining and if need be is to be considered in connection with the legislative prescriptions made in section 883, than to hold that the word "cost" as used in the statute is to be construed as meaning "actual cost", thus artificially negativing the opportunity to construe the legislative intent from the entire statute.

With the substitution of cost for percentage, the basis for the class distinction emphasized in Home-Stake Royalty Corporation v. Weems, supra, is removed and the scope of the rule of uniformity there expressed becomes broadened so as to include in one what was theretofore in the two classes. There is no distinction in reason why cost as the basis for ascertaining depletion should be different from the cost as basis for ascertaining depreciation. Such construction will reflect a legislative intent to insure uniformity of operation. To hold there is no deduction for depletion where no actual cost to owner obtained as incident to the acquirement would, if upheld, lead to confiscation, as hereinbefore indicated, in situations such as the present. The proper choice is manifest.

We hold that it was the legislative intent that resort should be had, if need be, to section 883 under authorized rules and regulations of the commission to ascertain the basis for computing depletion and that, under the applicable

force thereof, where property is acquired by devise the value thereof at time of acquirement controls as basis for computation. We further hold that the quoted amendment of 1943, which incorporates in section 880 an exception theretofore expressed in identical language in section 883 is not indicative of an absence in the 1941 statutes of the intent expressed in the amendment but is to be deemed confirmatory of the previous existence and that the design in such amendment is to express in section 880 that which, otherwise, would have to be inferred.

Premises considered, it is ordered that the finding of the commission that an additional tax was owing be reversed and the cause be remanded with directions to sustain the protest.

HURST, V.C.J., and RILEY, OSBORN, BAYLESS, WELCH, and DAVISON, JJ., concur.