Dear Senator Gilmer Capps,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
Do the words "without the authority of the intellectualproperty owner" contained in 21 O.S. Supp. 2000, §1990.1(1)(b) of the Trademark Anti-Counterfeiting Act modifythe word "affixed" or the words "sold, offered for sale,manufactured or distributed . . . offered or rendered" such thatthe Act forbids the unauthorized sale of genuine goods bearinggenuine trademarks?
¶ 1 Your question involves the Oklahoma Trademark Anti-Counterfeiting Act ("Act"), 21 O.S. Supp. 2000, §§ 1990[21-1990] — 1990.2, which provides criminal penalties for anyone who "knowingly and with intent to sell or distribute, uses, displays, advertises, distributes, offers for sale, sells or possesses any item that bears a counterfeit mark or any service that is identified by a counterfeit mark." Id. § 1990.2(A). The Act applies as well to anyone who "manufactures or produces with intent to sell or distribute any item that bears a counterfeit mark or any service that is identified by a counterfeit mark."Id. § 1990.2(C). As a criminal statute, the Act is strictly construed against the State and liberally in favor of the accused. Boutwell v. State, 659 P.2d 322, 329 (Okla.Crim. 1983).
¶ 2 Specifically, you ask us to interpret the statutory definition of "counterfeit mark" found in Section 1990.1(1)(b) of the Act:
1. "Counterfeit mark" means:
 a. any unauthorized reproduction or copy of intellectual property, and
 b. intellectual property that is affixed to any item that is knowingly sold, offered for sale, manufactured or distributed or to any identifying services offered or rendered without the authority of the intellectual property owner;
 2. "Intellectual property" means any trademark, service mark, trade name, label, term, device, design or word that is adopted or used by a person to identify that person's goods or services[.]
Id.
¶ 3 Before construing the actual language of the Oklahoma statute, we must understand the purpose of trademark law in general. Trademark law attempts to ensure the quality of trademarked products by prohibiting the manufacture or sale of goods bearing counterfeit marks. Federal law provides civil penalties for trademark infringement under the Lanham Act,15 U.S.C. § 1114(1) (1999), and criminal penalties under the Trademark Counterfeiting Act, 18 U.S.C. § 2320(a) (1998).
¶ 4 The Lanham Act creates liability for any person who "shall, without the consent of the [trademark] registrant — (a) use in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive[.]"15 U.S.C. § 1114(1) (1999). If inferior goods bear marks that are identical, or confusingly similar, to registered trademarks, consumers are deceived into thinking the goods were produced with the trademark owner's consent, thereby undermining the value of the trademarked brand as a guarantor of quality. Polymer Tech.Corp. v. Mimran, 37 F.3d 74, 78 (2d Cir. 1994). Many states, including Oklahoma, supplement the federal Lanham Act and Trademark Counterfeiting Act with their own statutes prohibiting trademark counterfeiting.
¶ 5 You ask, in effect, whether Oklahoma's Act goes beyond the scope of traditional trademark law, which imposes liability for the use of "spurious" marks which are "identical with, or substantially indistinguishable from," registered trademarks.15 U.S.C. § 1127 (1996); 18 U.S.C. § 2320(e)(1)(A)(ii) (1998). You wish to know whether Oklahoma's Act prohibits the sale of genuine goods bearing genuine marks affixed with the trademark owner's consent, when the sale has not been authorized by the trademark owner. You give the example of a trademark owner who authorizes distributors to sell products bearing the mark only to hair salons; in violation of that agreement, the products are diverted for sale in non-salon retail outlets. Such sales are clearly without the trademark owner's authorization; you ask whether they are prohibited by Oklahoma's Act.
¶ 6 In interpreting Section 1990.1, we attempt to ascertain the legislative intent by following established rules of statutory construction. Stemmons, Inc. v. Universal C.I.T. Credit Corp.,301 P.2d 212, 216 (Okla. 1956). You suggest that the relevant general rule of construction here, known as the "last antecedent" rule, is that limiting or restrictive clauses refer to the immediately preceding clause or "last antecedent." We agree.
 This rule of construction should not however be applied when it appears from an examination of the entire statute involved that to do so would defeat the evident intent of the legislature. . . .
. . . .
 A transposition of words and clauses may be resorted to when the sentence or clause is without meaning as it stands.
Talley v. Harris, 182 P.2d 765, 768-69 (Okla. 1947).
¶ 7 We see from Talley that construing a statute to harmonize with legislative intent is more important than mechanical application of the "last antecedent" rule.
¶ 8 We begin our analysis by diagraming that portion of Section 1990.1(1)(b) preceding the phrase "without the authority of the intellectual property owner":
1. "Counterfeit mark" means:
. . .
 b. intellectual property that is affixed to any item that is knowingly[1] sold, offered for sale, manufactured or distributed, or to any identifying services offered or rendered. . . .
¶ 9 First, we attempt to apply the last antecedent rule. One candidate for the last antecedent of "without the authority of the intellectual property owner" is "offered or rendered" because there is no comma following "rendered." Id. It makes little sense, however, to say that only services, and not conduct with respect to goods, require a mark owner's authorization. Further, comparing Oklahoma's statute with other states' whose language is substantially similar, we believe the absence of the comma is a scrivener's error; all but one of the other states' statutes contains the comma.[2]
¶ 10 You suggest that the last antecedent of "without the authority of the intellectual property owner" is "sold, offered for sale, manufactured or distributed . . . offered or rendered." The problem with this construction is that it makes the Act both over- and under-inclusive. The Act would be over-inclusive because it would make all unauthorized sales of genuine trademarked goods a violation of the Act, which results in an absurdity. For example, anyone who offered genuine trademarked goods for sale at a yard sale would violate the Act, if the trademark owner had not approved the sale. The Legislature cannot have intended that persons making such innocent sales be criminally liable for not procuring the trademark owner's consent first.
¶ 11 The same construction is also under-inclusive if "without the authority of the intellectual property owner" applies only to those who sell, offer for sale, manufacture, or distribute items, or offer or render services, bearing counterfeit marks. Id.
Such a construction affords trademark owners no protection from those who originally affix counterfeit marks to products or services, who are clearly equally as liable as those who later sell such items.
¶ 12 We find that applying the last antecedent rule yields an absurd result. "The legislature will not be presumed to have intended an absurd result and a statutory construction which would lead to an absurdity will be avoided if this can be done without violating the legislative intent." Grand River Dam Auth.v. State, 645 P.2d 1011, 1019 (Okla. 1982) (footnotes omitted). Following the rule in Talley, 182 P.2d at 768-69, when a sentence or clause is without meaning as it stands, we resort to transposing words and clauses to derive the legislative intent. In this case, we find that grammatically and logically "without the authority of the intellectual property owner" modifies the more remote antecedent "is affixed." 21 O.S. Supp.2000, § 1990.1[21-1990.1](1)(b).
¶ 13 Therefore, under Section 1990.1 a "counterfeit mark" is: (1) an unauthorized (i.e., without the authority of the mark owner) reproduction or copy of a trademark; and (2) a trademark (genuine or spurious) affixed to any item without the authority of the mark owner. Thus, the definition of "counterfeit mark" does not include genuine trademarks on genuine goods, if the marks were originally affixed with the authorization of the owner. The subsequent unauthorized sale of such genuine items, which is the focus of your question, is not forbidden by Oklahoma's Act.
¶ 14 We conclude, therefore, that Oklahoma's Act does not prohibit selling genuine goods bearing genuine trademarks, even if such sale is not authorized by the trademark owner.
¶ 15 It is, therefore, the official Opinion of the AttorneyGeneral that:
 The phrase "without the authority of the intellectual propertyowner" contained in 21 O.S. Supp. 2000, § 1990.1(1)(b) of theTrademark Anti-Counterfeiting Act modifies "is affixed," not"sold, offered for sale, manufactured or distributed . . .offered or rendered." Therefore, the Act does not prohibitselling genuine goods bearing genuine trademarks, even if suchsale is not authorized by the trademark owner.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
DEBRA SCHWARTZ ASSISTANT ATTORNEY GENERAL
[1] Although it appears from the structure of Section 1990.1(1)(b) that "knowingly" applies only to items "sold, offered for sale, manufactured or distributed" and not to services "offered or rendered," Section 1990.2(A) makes clear that offering or rendering services associated with a counterfeit mark must be knowing to be actionable. Id. "[T]o arrive at the legislative intent, the entire act must be considered . . . and, when the intention of the Legislature can be gathered from the entire statute, words may be modified, altered, or supplied, to give the statute the force and effect which the Legislature intended." In re Blain, 172 P.2d 795, 799 (Okla. 1946) (quoting Curtis v. Registered Dentists of Okla.,143 P.2d 427, 429 (Okla. 1943)).
[2] See, e.g., D.C. Code Ann. § 22-751(1)(B) (1997); Md. Code Ann. art. 27, § 48A(a)(2)(ii) (1996); Mass. Gen. Laws Ann. ch. 266, § 147(a) (West 1998); Mo. Ann. Stat. § 570.103(1)(1) (West 1998); 18 Pa. Cons. Stat. Ann. § 4119(i)(2) (West 1996); Tenn. Code Ann. § 39-14-152(a)(1)(B) (2000); Wash. Rev. Code Ann. §9.16.005(1)(b) (West 1999). Cf. Ariz. Rev. Stat. §44-1453(M)(1)(b) (1998).