[No. 22173.  Department One.  April 7, 1930.]

*In the Matter of the Guardianship of* THEOPHIL LEO
STROZYK.[1]

*Lester E. Pope,* for appellant.
*John I. O'Phelan,* for respondent.

BEALS, J.—Theophil Leo Strozyk is a disabled veteran of the American army, suffering under some mental disability due to his military service, who is now and for several years has been hospitalized at the United States veterans' hospital located at American Lake, Washington.  The veteran is receiving from the

[1]Reported in 286 Pac. 646.

United States, through the United States veterans' bureau, the sum of $57.50 per month and his father, Peter Strozyk, was, in June, 1920, by the superior court for Pacific county, appointed guardian of the person and estate of his son to receive the compensation above referred to and other sums paid by the government to the soldier, and function generally as such guardian.

During the month of November, 1926, Lester E. Pope, the regional guardianship officer of the United States veterans' bureau, stationed at Seattle, Washington, served upon the guardian and filed, pursuant to chapter 104, Laws of 1925, Ex. Ses., p. 157 (Rem. 1927 Sup., § 1586-1) a request for a "special written notice of proceedings," pursuant to which a copy of the guardian's report filed October 2, 1928, was served upon Mr. Pope, to which he filed objections on behalf of the United States.

Upon a hearing upon this report, the court entered an order reciting that the guardian had on hand in cash belonging to his ward the sum of $13,820.82; that the guardian had made certain expenditures, which were allowed; that the guardian was entitled to the sum of $240, as compensation for his service as guardian, and to the further sum of $50, as compensation to his attorney. To this order, Frank T. Hines, as director of the United States veterans' bureau, appearing by the local representative of the bureau, took certain exceptions, and from the order, in so far as the same approved the guardian's account and allowed the guardian compensation, the director of the veterans' bureau prosecutes this appeal.

It appears from the statement of facts that, since the approval of an account filed by the guardian for the period ending September 23, 1926, the guardian performed practically no services other than the re-

ceipt of the monthly payments of $57.50, as made by the veterans' bureau, and the deposit of the same in a savings bank, as the guardian had been directed to do by the court.

During all the period covered by the report with which we are now concerned, the incompetent has been continuously hospitalized in the institution maintained by the government at American Lake, and all, or practically all, of the property belonging to the incompetent, which has come into the possession of his guardian, consists of money paid by the United States government as compensation due or payable to the soldier because of his military service or on account of disability suffered by him in the line of duty.

Frank T. Hines, director of the United States veterans' bureau, appellant herein, appeared in the guardianship proceeding pursuant to Rem. 1927 Sup., § 1586-1, under authority of sections 5 and 21 of the "World War Veterans" Act, passed by Congress in 1924 [43 U. S. Stat. at Large, p. 607, ch. 320] and amendments thereto (U. S. Code, Annotated, title 38, § 426 and § 450, as shown in the 1929 Supplement).

In the report filed by the guardian October 2, 1928, the guardian charged against his ward's estate certain items as expenses incurred by him on trips to South Bend, an item of expense incurred on a trip to Seattle to cash a United States treasury certificate, and other sums constituting the expenses of himself and wife on visits to the hospital to see their son. In addition to approving the guardian's disbursements, as set forth in his account, the court allowed the guardian $240 as compensation for his services, evidently, as claimed by the guardian, on a basis of $10 per month for the twenty-four months which had elapsed since the filing of the 1926 report.

Appellant argues that the items allowed the

guardian for the expenses of himself and wife on their visits to their son in the hospital, and the items making up the guardian's expenses on trips to South Bend to have interest entered in a savings bank account book and to Seattle to cash a United States treasury certificate belonging to his ward, should not have been allowed. It would seem that, in so far as the presentation of the guardian's savings account book at the bank in South Bend was required in order that accrued interest might be entered thereon, the matter could have been attended to with safety and expedition through the United States mails, and it is difficult to understand why the guardian was required to make a trip to Seattle in order to cash a United States treasury certificate, as this matter could certainly have been satisfactorily attended to by or through the bank at South Bend.

In regard to the allowances out of the ward's estate for expenses of the guardian and his wife incurred in visiting their son, it must be remembered that the guardian is the father of his ward, and therefore should be allowed money out of his ward's estate to be expended in visiting his son only in cases where such allowance would be made out of the funds of such a guardianship were the guardian a stranger and the father and mother financially unable to pay the expenses necessarily incident to such visits. Under such circumstances, it might in certain cases be proper to allow out of the ward's estate money to be expended by the parents in visiting their son, but only when the parents were unable to pay such expenses, and when it should further appear that such visits would be understood, appreciated and enjoyed by the ward and result in some benefit and pleasure to him. The record before us contains nothing from which we can determine whether or not in this instance the parents are

financially able to bear the expense of such trips to American Lake to visit their son as natural affection and interest in his welfare would prompt them to make.

We will, therefore, presume that the order of the trial court was correct in making allowances for such visits out of the ward's estate. The allowances to the guardian for his expenses to South Bend and Seattle are, however, disallowed, as such expenditures seem to us to have been wholly unnecessary.

■ The question of the guardian's compensation is now to be considered. Appellant relies upon a regulation of the United States veterans' bureau referring to guardianships, such as this, which provides that the commission or allowance to such guardians should be limited to a maximum of five per cent of the amounts received by a guardian during any one year, which amount the bureau regards as a proper maximum, except where unusual service is rendered.

It is evident that all of the property which came into the possession of the guardian between the dates of the filing of his report in 1926 and that of 1928 consists of money paid by the United States government as compensation or insurance, payable to respondent's ward because of military service rendered by the ward and/or disability suffered by him in the course thereof. In so far as any such payments partake of the nature of a pension, the Congress of the United States has undoubted power to pass laws which will protect the beneficiary of its bounty against excessive charges for services rendered in assisting the applicant in applying for his pension, as well as against claims on the part of creditors or assignees of the pensioner.

In such cases as that now before us, it would seem that Congress would have power to provide that the money paid by the government of the United States for the benefit of the soldier should not come into the

hands of any guardian appointed by a state court, but should be held and disbursed on account of the beneficiary by some agency of the United States. No such legislation has been enacted, but, in considering the relationship of the United States government to the unfortunate incompetent whose guardianship is now being considered, the power and functions of the United States in connection with the control, management and disbursement of such funds must be considered. This question is discussed in 21 R. C. L., title "Pensions," p. 247, § 13, and the following authorities are also in point: *United States v. Hall,* 98 U. S. 343, 25 L. Ed. 180; *Frisbie v. United States,* 157 U. S. 160, 39 L. Ed. 657; *United States v. Ryckman,* 12 Fed. 46; *United States v. Moyers,* 15 Fed. 411; *Manning v. Spry,* 121 Iowa 191, 96 N. W. 873.

This court considered somewhat similar questions in *In re Cross' Estate,* 152 Wash. 459, 278 Pac. 414, and, in determining the ultimate beneficiary of a portion of the proceeds of a policy of war risk insurance written by the government upon the life of a soldier who later died intestate and unmarried, gave effect to the manifest intention of Federal legislation and held that the proceeds of such a policy of war risk insurance were not liable to the state law providing for the taxation of inheritances.

Money coming into the possession of a guardian under the circumstances presented by the case at bar is not considered, in fixing the compensation of a soldier's guardian having custody thereof, in the same light as ordinary assets of a guardianship estate. The United States government has a measure of control over payments made by way of pensions to those who have served in its army or navy, or by way of war insurance or compensation to those veterans who have been, to a greater or less degree, disabled while in such

service. The regulations of the veterans' bureau upon which appellant relies, in referring to compensation to be allowed a guardian, do not attempt to prescribe an absolute or fixed rule, but simply state a general policy. In such proceedings as that now before us, such regulations should be sympathetically considered by the courts and the spirit thereof followed where rulings in accordance therewith will work no injustice. We deem this a proper case for the application of the rule suggested by the regulations of the veterans' bureau above referred to.

The order appealed from is affirmed, save in so far as it allowed the expenses of the guardian on trips to South Bend and Seattle, and in so far as it allowed him compensation for his services since the date of the filing of his last report in the sum of $240. The items of expense above referred to will be disallowed; the guardian will be allowed for his services such sum, not exceeding an amount equal to five per cent of the funds received by him during the period covered by the report which was approved by the order now before us, as the court shall deem reasonable. In all other respects, the order appealed from is affirmed. Neither party will recover costs.

MITCHELL, C. J., PARKER, MILLARD, and TOLMAN, JJ., concur.