In the Matter of the Estate of WILLIAM GARMES, an Incompetent Person.

Supreme Court, Special Term, Kings County, February 5, 1936.

*James J. Richman,* for James J. Lowrey, committee of the estate of William Garmes.

BROWER, J. The committee of an incompetent veteran, on the examination of his annual inventory and account, made claim before the referee to (1) commissions on income at the rate of five per cent from March 24, 1920, to March 24, 1935, pursuant to section 1384-k of the Civil Practice Act, and also to (2) additional compensation by reason of alleged extraordinary services rendered by said committee.

Prior to July 1, 1929, the provisions, as then in force, of section 1376 of the Civil Practice Act (as enacted by Laws of 1920, chap. 925) governed the right to compensation which committees of incompetents were entitled to, and the provisions of said section applied to committees of veterans as well as of non-veterans. The section entitled committees of the property of incompetents to the same commissions which were allowed to executors, administrators and testamentary trustees. Under section 285 of the Surrogate's Court Act on a settlement of the accounts of any such fiduciary, he is entitled to an allowance for his services at the rate of five per cent for receiving and paying out all sums of money not exceeding $2,000, at the rate of two and one-half per cent for receiving and paying out additional sums not amounting to more than $20,000 and at other specified rates on additional sums. The courts adopted the practice of apportioning the commissions of such fiduciaries for receiving and paying out moneys, one-half for receiving and one-half for paying out (*Matter of Smith,* 86 Misc. 136, and cases there cited), and such was the apportionment of commissions which committees of incompetents were allowed under the aforesaid provisions of section 1376. (*Matter of Osgood,* 119 Misc. 251.) Under the law as it read on the aforesaid date, the courts construed

said section to mean that committees were entitled to no commissions except by award on judicial settlement of their accounts. (*Matter of Osgood, supra; Matter of Longo,* 226 App. Div. 285; *Matter of Martin,* 135 Misc. 118.)

Effective on July 1, 1929, chapter 340 of the Laws of 1929 enacted article 81-A of the Civil Practice Act (§ 1384-a *et seq.*), the several sections of which apply only to incompetent veterans and infant wards of the United States Veterans' Bureau. The provisions of said article are not a repeal of or a substitute for the basic or statutory law of this State relating to incompetents, but are to be read in conjunction with article 81 of the Civil Practice Act (§ 1356 *et seq.*), and any other pertinent provisions of law relating to incompetents, and any provisions of law inconsistent with its provisions are to that extent superseded by its provisions. (Civ. Prac. Act, § 1384-b.) Section 1384-k of said article deals with the question of compensation payable only to committees of veterans, and must be read with section 1376 as it read prior to July 1, 1929, and, in so far as any provisions of the former section are inconsistent with the provisions of section 1376, the provisions of the latter section must yield. We have already considered the right to commissions conferred by section 1376 alone. When section 1384-k became a law, any doubt as to whether a committee of a veteran might have commissions on corpus received from a preceding committee was in express terms resolved in the negative. On the other hand, it raised a question as to whether or not the usual rates theretofore applicable to committees of veterans still held good, and also whether commissions to which such committees were entitled thereby were still to be apportioned according to the theretofore existing rule or were to be allowed in full on receiving the estate. The particular provisions of section 1384-k giving rise to these doubts declare that the compensation for " administering the estate of a ward shall be fixed by the court not to exceed five per centum of the income of the ward during any year." As the provisions of section 1376 read when these provisions were enacted, commissions had even then to be first allowed by the court, and so the provision that the court shall fix the commissions did not change any existing requirements; fixing them at " not to exceed five per centum " was a provision of some significance, nevertheless, and by this elastic language the court was given discretionary power to fix the ordinary commissions to which committees of veterans in the several States adopting the uniform Veterans' Guardianship Act may be entitled, computed at the same rates that committees generally by the laws of such States respectively are entitled, so long as the court does not fix and award com-

missions in an amount exceeding the limitation specified. Had the intent of the uniform act been to make commissions in all respects uniform throughout the several States, it would doubtless have prescribed arbitrary rates or some fixed basis for their computation. The rates at which commissions were computed for committees of veterans prior to the enactment of section 1384-k survived its enactment and are the usual rates by which this court fixes the ordinary commissions of such a committee so long as and to the extent that they do not exceed the limitation specified.

No estate can ordinarily be said to be " administered " until it has been received by a fiduciary, then managed during his holding of it and finally duly paid over, and it is the general policy of our law with respect to those who administer a trust or estate that " commissions cannot be paid or retained until judicially allowed." (*Matter of Butler*, 9 N. Y. Supp. 641; 1 Con. Surr. 58, 70; *Matter of Furniss*, 86 App. Div. 96.) As the court said in *Oakeshott* v. *Smith* (104 App. Div. 384, 388; affd., 185 N. Y. 583): " The right to commissions depends upon the rendition of the service and the settlement of the account. Until those two things have taken place commissions have not been earned, and an executor is not legally entitled to them. (*Matter of Worthington*, 141 N. Y. 9.) " " The compensation is given to him for his care and management of the estate, and not for the simple act of receiving and paying out." (*Wagstaff* v. *Lowerre*, 23 Barb. 209, 226; cited with approval of this principle in *Matter of Bushe*, 227 N. Y. 85.) Were full commissions to be awarded or permitted to be retained for merely receiving an estate, a strong incentive to diligence and zeal would be lacking, and the temptation to be content with a lax or perfunctory administration of the estate might be encouraged. A rule awarding half commissions to the receiving and half to the paying out of the moneys is a salutary one. It is and has been the rule applicable to an executor, administrator or trustee from an early date. (*Matter of Smith*, 86 Misc. 136; *McAlpine* v. *Potter*, 126 N. Y. 285; *Matter of Galloway*, 139 Misc. 183.) Chancery looked upon trusts as honorary and not undertaken for mercenary motives, and " the English Court of Chancery did not   *   *   *   allow compensation to trustees, executors, etc., unless the same is given expressly or by implication, by the deed or will creating the trust. (Lewin on Trusts, 438.) The same rule obtained in this State until the passage, in 1817, of the act giving commissions to executors and administrators." (*Wagstaff* v. *Lowerre, supra*, p. 223.) Under the statute passed April 15, 1817 (Laws of 1817, chap. 251), a Court of Chancery was authorized " in the settlement of the accounts of guardians, executors and administrators   *   *   *   to make a

reasonable allowance " to them for their services over and above their expenses. Subsequent to the enactment of this statute, Chancellor KENT in *Matter of Roberts* (3 Johns. Ch. 43), on the petition of the committee of an incompetent praying for commissions at the rate of five per cent on the whole sum paid over and received, considered the case within the equity of said statute and allowed him commissions as follows:

" *Five* per cent. on all sums *received and paid out*, not exceeding 1,000 dollars [*i. e.*, two and one-half per cent for such sums received, and two and one-half per cent for such sums paid out].)

" *Two and an half* per cent. on any excess, between 1,000 dollars and 5,000 dollars.

" *One* per cent. for all above 5,000 dollars." (Italics in original.)

From such an early beginning has it been the policy of the law, even as to incompetents' estates, to apportion commissions, and it would require a statute which in express terms varied this established rule or usage to change it. Ordinary commissions as the right thereto prevailed pursuant to section 1376 as it read upon the enactment of section 1384-k and until March 31, 1930, when chapter 209 of the Laws of 1930 (hereinafter referred to) became operative, were not affected by the above-quoted provisions of section 1384-k further than that, with respect to accounts duly filed during said period, ordinary commissions of committees of veterans must not exceed the five per cent limitation prescribed, and they are to be fixed in any event by the court upon a judicial settlement. These rights were modified, however, when on March 31, 1930, the amendment to section 1376 effected by chapter 209 of the Laws of 1930 became operative.

This amendment of section 1376 in large measure nullified the theretofore established rule of the courts, and, instead of requiring all commissions to be dependent upon the order of the court on a judicial settlement, authorized a committee of the property of an incompetent upon filing his annual account (his " report," as the amendment calls it for the purposes of such commissions) to retain and withdraw from the estate receiving commissions on funds of the estate shown by such report to have been received as income, together with paying out commissions on income and corpus shown to have been paid out, during the period represented by such report; the rates allowed to executors, administrators and testamentary trustees being the basis for the computation of such commissions. Section 1376, as so amended to grant commissions as on annual rests, is an exception to the rule that commissions are not earned until an accounting is had and the allowance thereof is made, and to entitle him to such commissions it is incumbent upon a committee to bring

himself within the terms and conditions of the statute. (Cf. *Conger v. Conger*, 105 App. Div. 589; affd., 185 N. Y. 554.) A committee should claim such commissions as this amendment grants him, upon filing each annual report, and such report should reflect therein such retention, if, as the statute authorizes him to, the committee of a non-veteran does so retain and withdraw them from the estate. The failure of such a committee so to claim and retain such commissions in any one year will not permit the afterclaim and retention, and their inclusion in an annual report of a subsequent year, of any such annual rest commissions not so claimed and retained when any such report was filed, except under unusual circumstances; moreover, a report once examined and passed may not be reopened. (*Matter of Haher v. Hamilton*, 267 N. Y. 474.) If the committee of a non-veteran is entitled to any other or further compensation, it may be awarded him upon a judicial settlement of his accounts.

When the provisions of both sections 1376, as amended, and 1384-k are read together and the inconsistent provisions of the latter section are made to prevail, the effect is to entitle committees of veterans, with respect to the estates they are administering, to commissions as on annual rests, upon the same terms and conditions that committees of the property of non-veterans under the provisions of section 1376, as amended, are entitled to upon the estates they are administering, subject, however, to the following modifications: Committees of veterans may not retain and withdraw from the estate any commissions, but may, nevertheless, make claim to annual rest commissions, provided such claim is embodied in the annual report for the period for which such commissions are claimed and a reservation of the amount thereof made and stated in such report, whereupon the court will, by order to be made upon the completion of the examination of such annual report, fix and award the annual rest commissions to which the committee of a veteran who has proceeded as aforesaid may be entitled; the committee of a veteran will not, however, be allowed commissions in excess of the five per centum limitation prescribed by section 1384-k nor any commissions on corpus received from a preceding committee. Any other compensation than annual rest commissions as aforesaid to which a committee of a veteran may be entitled shall be fixed and awarded only upon a judicial settlement of his accounts. While the court does not sanction bringing on intermediate judicial settlements unnecessarily, every application therefor will be examined by the court in the light of the particular grounds stated therein, and the allowance or disallowance thereof will depend upon the merits of each case.

The commissions to which committees are entitled must be determined in accordance with the law in force at the time of the settlement of their accounts. (*Dakin* v. *Demming*, 6 Paige, 95; *Naylor* v. *Gale*, 73 Hun, 53; *Whitehead* v. *Draper*, 132 App. Div. 799.)

The right of the committee of the veteran to commissions in this particular case will be determined in accordance with the foregoing. And first as to his claim for commissions at the rate of five per cent on income for the period from March 24, 1920, to March 24, 1935.

Not until their allowance on a judicial settlement of his accounts will the committee be entitled to any commissions based on such annual reports as were filed, as required by statute, prior to July 1, 1929; nor on those so filed on and after said date but prior to March 31, 1930. With respect to the annual reports so filed on and after said last-mentioned date, it does not appear that annual rest commissions have been claimed and reserved in the several annual reports filed (subject to their amount being fixed and allowed by court order after such respective reports have been duly examined), except that commissions in the sum of $591.24 appear to have been claimed in the annual report filed for the year ending March 24, 1935, and the balance of the estate at the end of that year appears to be in excess of said sum. Any commissions to which the committee may be entitled under annual reports filed for the periods prior to his report for the year ending March 24, 1935, will accordingly await a judicial settlement for their allowance.

The said 1934–1935 report of said committee shows, among other items, the receipt during said period of war risk insurance benefits in the total sum of $10,350, of which $10,235 represents disability benefits at the rate of $57.50 monthly from March 29, 1920, to and including December 29, 1934, paid to the committee in a lump sum by the United States Veterans' Bureau. It seems that the premium due May 1, 1920, on a yearly renewable term insurance certificate issued to this veteran for $10,000 was unpaid, but that his committee had recently successfully asserted a claim to an allowance of monthly payments to him for life, by reason of total permanent disability. It is on these installments received as aforesaid that this committee asks that commissions be awarded him. If, pursuant to section 1376, such installments were received by this committee as corpus, any commissions to which he may be entitled on them must await a judicial settlement; if received as income, commissions as on annual rests may possibly be fixed and awarded on such installments. Definitions of the terms as used in article 81-A of the Civil Practice Act are contained in section 1384-a, and as there defined the " terms ' estate ' and ' income ' shall include only moneys received by the guardian from the bureau

and all earnings, interest and profits derived therefrom." The implication from this definition is that moneys received by a committee of a veteran from the Veterans' Bureau constitute moneys which the committee has received as income. In any event, installment benefits received under a war risk insurance certificate by such committee because of the total permanent disability of his ward should be so classed, and represent funds of the estate which a committee " has received as income " within the meaning of section 1376, as amended after section 1384-a became a law, and are the subject of commissions as on annual rests. Neither was their character as income affected because the installments were deferred as to payment and were received for the most part in a lump sum; as and when any such installments were in fact received by the committee, they constitute income of the estate — at least for the purposes of commissions. The report of this committee for the year ending March 24, 1935, shows income received of $11,824.87, inclusive of all the aforesaid installments, on which the committee is entitled to receiving commissions at the rate of two and one-half per cent on the first $2,000, or $50, and at the rate of one and one-fourth per cent on the balance, being $9,824.87, or $122.81, a total of $172.81 for receiving income. He is also entitled to paying out commissions on $972.50 disbursed, whether corpus or income, at the rate of two and one-half per cent, or $24.31, a total of $197.12 for both receiving and paying out commissions on the items shown by said report, which are the only commissions allowable to this committee in the order to be entered hereon.

The committee also made claim, before the referee, for additional compensation. The provisions of section 1384-k expressly require that an application for additional compensation for extraordinary services rendered by a committee of a veteran shall be upon petition to the court and after a hearing thereon, on notice as in said section provided. The court, pursuant to the provisions of section 1376, relating to such compensation, will, however, entertain such an application only when it is embodied in and prayed for by a petition for permission to render an intermediate account for judicial settlement, or upon a final accounting; on a judicial settlement, all persons interested in the estate will be before the court.

Order signed.