**BOARD OF EDUCATION, CITY OF OKMULGEE, v. STATE BOARD OF EDUCATION et al.**

No. 33623.   Oct. 5, 1948.

Rehearing Denied Dec. 7, 1948.

*200 P. 2d 394.*

L. L. Cowley, of Okmulgee, for plaintiff.

Mac Q. Williamson, Atty. Gen., and Richard M. Huff, Asst. Atty. Gen., for defendants.

ARNOLD, J. This mandamus proceeding was instituted by the plaintiff to require the defendants to allocate and pay state aid to it and all other qualifying school districts similarly situated on a basis of 50 per cent equated value of all locally assessed property in Okmulgee county.

The amount of state aid that shall be paid to a qualified school district is the difference between the properly determined and certified minimum cost program and the minimum cost income as defined and prescribed by the State Aid School Law. (Title 70, ch. 21, article III, sections 1-12, S. L. 1947.)

Minimum income constitutes the aggregate of several money items, only one of which is in controversy here. The application of the plaintiff for state aid was accepted by the State Board of Education and determined to be correct as to data concerning all items of income therein set forth. The locally assessed valuation of property in Okmulgee county as determined by the Tax Commission on data compiled by it in 1945, is 58.354 per cent of actual value of all locally assessed property in that county. The Board used this figure as the basis of its computation of minimum income of the qualifying school district and it asserts that the State Aid School Law contemplates the use of the certified locally assessed county valuation in all cases where it is equal to or exceeds 50 per cent of actual value. This is tantamount to saying that the equated value of locally assessed property in districts where the assessment is on a basis of or greater than 50 per cent, is, and must be accepted as, the equated value which must be subtracted from the minimum cost program to arrive at the amount of state aid payable in all such cases. On the contrary, the school district contends that an equated value of 50 per cent actual value must be used by the State Board in determining the amount of state aid in all cases whether the locally assessed valuation is on a basis of less, equal to, or greater than 50 per cent actual value.

By stipulation and otherwise, it is conceded by both parties that the amount of state aid accorded and paid by the State Board of Education is correct if its method of calculation is proper. On the other hand, if the contention of plaintiff is correct, it would be entitled to receive the further sum of $11,264.89 for its majority schools and $............ for its separate schools.

It is conceded by the State Board of Education that enough money is now on hand to pay all claims for additional state aid, figured on the basis of the

method proposed by plaintiff in the 48 counties where the locally assessed county valuation is greater than 50 per cent actual value, and that claims have been filed therefor and will be recognized and paid on the basis of the method of determination of minimum income by this court in this case.

The original School Aid Act was passed in 1943, the next one in 1945 (Title 70, ch. 21, S. L. 1945) and the one now in operation and directly under consideration was passed by the Legislature in 1947. Many changes have been made not pertinent here.

For the purpose of aiding all qualified and qualifying school districts in the State of Oklahoma to finance their "school budgets," the Legislature in the 1947 Act provided:

"The State Board of Education is hereby required as a basis for fair apportionment of State Aid, to use each year an equated value of locally assessed valuations among the counties of the State for calculation of the Minimum Program Income from ad valorem taxes. Such equated value of locally assessed property of the county shall be fifty per cent (50%) of the actual or one hundred per cent (100%) value, and shall be based upon data furnished by the Oklahoma Tax Commission out of its study of the relationship by it ascertained between current locally assessed valuations and the transaction (actual) values disclosed by its study for its report to the State Board of Equalization in 1945, showing the percentage that the current locally assessed valuation of taxable property in each county bears to said actual or one hundred per cent (100%) valuation so determined by the Oklahoma Tax Commission." (Section 5, subsection 6(a).)

It must be, and is, conceded that the provisions of the foregoing subsection are explicit, plain, and entirely free from ambiguity. It provides a fair, equal, uniform, fixed, and exclusive basis for apportionment of state aid. The provision being uniform in its application and the whole act being for the purpose of helping all qualifying school districts in the state to finance their budgets, the act and, therefore, the provision was not designed for weak schools to the exclusion of comparatively strong districts able to finance their budgets. The act is not a so-called weak school bill.

The foregoing subsection is immediately followed by the provision:

"Whatever per cent of increase from the locally assessed valuation of any county is necessary to establish the equated value of locally assessed property, the same per cent of change shall be applied to the certified locally assessed valuation of each school district within the same county to provide the basis for calculating the Minimum Program Income of each school district." (Section 5, subsection 6(b).

The provision before its amendment reads:

"Whatever per cent of change from the certified locally assessed valuation of any county is necessary to establish the equated level of locally assessed valuation among counties, the same per cent of change shall be applied to the certified locally assessed valuation of each school district within the same county to provide the basis for calculating the Minimum Program Income of each district."

The real purpose of the provision is to make applicable the determination of percentage of county assessed valuation to school districts, there being no data from which to calculate the percentage that the assessed valuation of a school district bears to the actual value of the assessable property in the district. By the provision the percentage of relationship between the assessed and actual value of property in a county, as determined by the Tax Commission in 1945, is made applicable to all qualifying school districts of the county in determining the equated value of 50 per cent which is the required and exclusive basis.

It is conceded that no material change has been made in subsection

6(a) since its first enactment and the only change pertinent here in 6(b) is a substitution of the word "increase" in the 1947 Act for the word "change" appearing in the first line of the subsection in the 1945 Act. Prior to this change, the defendants had administratively construed this subsection in accordance with the contention now made by the plaintiff herein and paid state aid to districts that had a locally assessed valuation of more than 50 per cent on the basis of an equated value of 50 per cent of actual value. The defendants say that the word "change", as originally used by the Legislature in this subsection, means any change—up or down—increase or decease, and, therefore, indicated an intention of the Legislature that a locally assessed valuation in excess of 50 per cent actual value should be reduced or decreased to the equated basis of 50 per cent value, hence its previous interpretation and application of the subsection under the 1945 Act. They contend that the word "increase" used in the subsection of the 1947 Act in place of the word "change" used in the same subsection of the 1945 Act showed the intention of the Legislature to cut off the possibility of decrease of percentage of locally assessed valuations in excess of 50 per cent of actual value, so the State Board of Education under this subsection of the 1947 Act used the certified locally assessed valuation of the qualified district on the theory that its authority to decrease the percentage of assessed valuation to 50 per cent had been cut off by the indicated change in the wording of the provision. If this argument be conceded, this subsection has no practical use, value, or application except as to school districts situated within the counties of the state that have a locally assessed valuation of less than 50 per cent of actual value. By both subsections the Legislature made it very plain that school districts situated in such counties should receive state aid only on the assumed basis of a locally assessed valuation of 50 per cent actual value. Such districts would not get less state aid than districts which have a locally assessed valuation in excess of 50 per cent, but would fall short of receiving the full amount of the minimum program cost by the amount represented by their deficiency of local assessment below 50 per cent. The provisions of subsection 6(a), supra, are plain and unambiguous. The Legislature thereby fixed arbitrarily what it considered to be a fair and equal standard on which to base that portion of the minimum program income to be derived from required taxation. This equated, equal, and fair standard fixed by the Legislature is 50 per cent of the actual or 100 per cent value of locally assessed property within a county. This fair and equal standard must be determined by the State Board of Education as therein provided and used as the basis of determination of minimum income from this source in all cases. The effect of the interpretation here sought by defendants would be to render unequal and unfair the standard or basis for determining state aid to qualifying school districts for the purpose of helping them finance their school budgets, contrary to the plainly expressed intention in subsection 6(a) supra, which has never been changed. Surely the Legislature did not intend such a fundamental change to follow from its slight change in the wording of the provision.

Inapt or incorrect choice of words will not be construed and applied in such manner as to destroy the real and obvious purpose of an act of the Legislature.

The words "change" and "increase" are not synonymous, but the word "increase" will be accorded the meaning of "change" in a minor provision of an act where to do otherwise would destroy the real purpose of the Legislature by promoting inequality and unfairness contrary to the obvious and real purpose of the Legislature.

Considering the general purpose of the act, the absolute requirement that a 50 per cent equated value shall be used as the basis of all apportionment and the inequality and unfairness that would otherwise result, we must conclude that the substitution of the word "increase" for the word "change", as indicated, was inadvertent and without intention on the part of the Legislature to nullify its plainly expressed requirement that all allocations of state aid be made upon the equal basis of 50 per cent actual value in all cases and without intention on its part to render the provision inapplicable as to school districts wherein the assessed valuation is greater than 50 per cent of actual value.

However, the court is of the opinion that the writ should not issue in peremptory form for the full amount claimed by plaintiff, but that the writ should direct and require defendants to pay to the plaintiff and to the other districts and separate schools similarly situated and entitled thereto a proportionate and pro rata share of the funds which are now or may be available according to the stipulation between the parties and under the principles of law herein announced.

Let the writ issue as thus directed.

HURST, C. J., and RILEY, GIBSON, and LUTTRELL, JJ., concur.

DAVISON, V. C. J., and WELCH and CORN, JJ., dissent.