Sumner G. WHITTIER, Adm'r of Veterans' Affairs, Plaintiff in Error,

v.

Mabel MURRELL, Guardian of Harrison J. Maddux, incompetent, Defendant in Error.

No. 39348.

Supreme Court of Oklahoma.

May 31, 1961.

Joe S. Wallace, Joe W. Howard, Muskogee, for plaintiff in error.

Sanders & McElroy, Tulsa, for defendant in error.

HALLEY, Justice.

On April 24, 1942, defendant in error, Mabel Murrell, hereafter referred to as "appellee", was appointed guardian of Harrison J. Maddux, hereafter referred to as "veteran", an incompetent World War I veteran.

In 1960, appellee, as guardian, filed in the County Court of Tulsa County, Oklahoma, an accounting covering the period of April 5, 1959, to April 5, 1960. The accounting showed that veteran had an estate of $11,326.31, all of which was derived from disability compensation paid veteran from 1922 to 1955; that no property nor income had been received by appellee during the accounting period (in fact, veteran received no disability benefits from 1955 on); that during said period she had written five checks as guardian in payment of premiums on her guardianship bond, an attorney's

fee, a guardian's fee, a notary fee and court costs. The appellee was allowed compensation for serving as veteran's guardian during the accounting period. It was not claimed nor is it contended that appellee rendered any extraordinary services.

The plaintiff in error, Sumner G. Whittier, was then Administrator of Veterans' Affairs, but has been succeeded by J. S. Gleason, Jr. The Administrator of Veterans' Affairs will be referred to as "appellant." An objection was filed to appellee's claim for compensation. It was based upon the proposition that since appellee received no money as guardian during the accounting period she was not entitled to compensation under the provisions of 72 O.S.1951 § 126.12, which is a part of the 1945 Revised Uniform Veterans' Guardianship Act. The Act has been codified in Oklahoma as 72 O.S.1951 §§ 126.1 to 126.-23, inclusive. It has been adopted in at least twenty-eight States of the Union.

The County Court denied appellant's objection and allowed appellee compensation as veteran's guardian during the accounting period, in the amount of $60. Appellant perfected an appeal to the District Court of Tulsa County, which Court, following a trial de novo, entered judgment allowing appellee a guardianship fee of $60. From said judgment, appellant perfected this appeal.

The sole issue presented by this appeal is whether the guardian of an incompetent veteran may be allowed compensation for ordinary services as guardian where no money was received or accrued to the account of the veteran during the period for which compensation is sought.

Appellant contends that Section 126.12, supra, is the only statute which treats with compensation that may be allowed the guardian of a veteran's estate; that said statute as a special statute prevails over the general statute treating with the same general subject; that under the provisions of said section, compensation can only be allowed where money is received by the guardian during the period for which compensation is sought. The cited statute reads as follows:

"Compensation payable to guardians shall be based upon services rendered and shall not exceed five (5%) per cent of the amount of moneys received during the period covered by the account. In the event of extraordinary services by any guardian, the court, upon petition and hearing thereon may authorize reasonable additional compensation therefor. A copy of the petition and notice of hearing thereon shall be given the proper office of the Veterans Administration in the manner provided in the case of hearing on a guardian's account or other pleadings. No commission or compensation shall be allowed on the moneys or other assets received from a prior guardian nor upon the amount received from liquidation of loans or other investments."

Appellee contends that the provisions of 58 O.S.Supp.1953, § 884, apply and that under said Section a guardian who is faithful to his trust must, in all instances, be allowed his expenses and reasonable compensation. Section 884 reads as follows:

"Every Guardian must be allowed the amount of his reasonable expenses in the execution of his trust, and he must also have such compensation for his services as the court in which his accounts are settled deems just and reasonable, however, guardians appointed by the County Court shall not receive a greater amount than the following compensation, and no other, for their services as acting as guardian in the following matters:

"(A) For collecting real estate rents, ten (10%) per cent of the amount collected and accounted for. For collecting oil and gas rentals and royalties, three (3%) per cent of the amount collected and accounted for.

"(B) For collecting interest on real estate loans, ten (10%) per cent of

the amount collected and accounted for.

"(C) For collecting all other income, ten (10%) per cent of the amount collected and accounted for."

It is apparent that Section 126.12, supra, is a special statute and that Section 884, supra, is a general statute. In so far as the provisions of Section 126.12 conflict with the provisions of Section 884, the provisions of Section 126.12 must prevail. See In re Cummings' Estate, 196 Okl. 377, 165 P.2d 140; State of Oklahoma ex rel. White et al. v. Beeler et al., Okl., 327 P.2d 664; In re Garmes' Estate, 159 Misc. 470, 287 N.Y.S. 52.

In the last above cited case, it was stated in substance that in so far as the provisions of a special statute of New York which treated with compensation allowable to the guardian of an incompetent veteran conflicted with a general statute treating with compensation allowable a guardian, the provisions of the special statute prevailed; that relevant provisions of the general statute would be applied where not dealt with in the special statute.

To us it is clear that Section 126.12 means what it says and a guardian appointed under the aforementioned Act may be allowed a fee on funds received into the guardianship during the period covered by the account. If there is no income there is no guardianship fee. Whether this is sound legislation is not our concern. That is a legislative matter but certainly it does prevent a guardianship estate from being frittered away for fees when no substantial service has been performed.

No criticism is intended of the guardian and her counsel in this case because it is clear that their motives in the handling of this estate are of the highest order.

It is to be remembered that funds in the guardianship estate were received from payments of the Veterans' Administration to the ward and as has been said both the Veterans' Administration and our Legislature are and were desirous of preserving the estates of veteran wards.

We see nothing unreasonable or absurd in giving a section of the statutes that construction that is apparent from its wording.

Should the provision for the payment of the guardian of veterans prove unworkable then the Legislature should correct it. It is not this Court's prerogative to distort plain language in order that a more plausible or workable result might be obtained. We think that our Legislature intended to and did restrict the fees that may be allowed in this type of guardianship proceedings.

This was approved in the case of In re Strozyk's Guardianship, 156 Wash. 233, 286 P. 646, 648, wherein it was said:

"Money coming into the possession of a guardian under the circumstances presented by the case at bar is not considered, in fixing the compensation of a soldier's guardian having custody thereof, in the same light as ordinary assets of a guardianship estate. * * In such proceedings as that now before us, such regulations should be sympathetically considered by the courts, and the spirit thereof followed where rulings in accordance therewith will work no injustice. * * *"

In line with this, also is the statement in the case of Administrator of Veterans' Affairs v. United States Nat. Bank of Portland, 191 Or. 203, 229 P.2d 276, 284, which is:

"Both the state, and in many instances, the federal government, have a special interest in the care and support of incompetent persons who are receiving support from the United States government out of public funds, and the legislature violates no rule of equal protection in singling out that class of persons for special treatment. The work of the guardian in these cases may be just as onerous as in other cases, but there are reasons of public policy regulating their compensation, which do not exist in the case of guardianship over funds derived from private sources. If a

guardian should elect to accept appointment in a case of this kind, he would do so cum onere. * * * "

The judgment in this case is reversed with directions to disallow the guardian's fee in this case for that period when no funds are received into the estate.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.